**Not for Publication in West's Federal Reporter**

# United States Court of Appeals

## For the First Circuit

---

No. 05-2210

UNITED STATES,

Appellee,

v.

PLUTARCO DE LA CRUZ,

Defendant, Appellant.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Daniel R. Domínguez, U.S. District Judge]

---

Before

Torruella, Circuit Judge,
Selya, Senior Circuit Judge,
and Lipez, Circuit Judge.

---

Alexander Zeno on brief for appellant.
Nelson Pérez-Sosa, Assistant U.S. Attorney, and Rosa Emilia
Rodríguez-Velez, United States Attorney, on brief for appellee.

---

December 19, 2007

---

**Per Curiam**.  Defendant-appellant Plutarco de la Cruz pled guilty to possessing marijuana with intent to distribute and conspiring to import marijuana into the United States after being intercepted with six others in a vessel off the coast of Puerto Rico carrying approximately 2,500 kilograms of marijuana.  The defendant requested a downward adjustment in his federal sentencing guidelines offense level, arguing that he had been only a minor participant in the offenses.  The district court denied the adjustment and, after several days of sentencing hearings in which the defendant testified, granted him a "safety valve" adjustment.  The court sentenced the defendant to 70 months in prison (the bottom of the applicable guideline imprisonment range).

On appeal, the defendant raises five issues. Because we find none of them to have merit, we summarily affirm his conviction and sentence.

I. Guilty Plea

The defendant argues that he is entitled to specific performance of the government's alleged initial "partial oral/written agreement" pursuant to which he and his co-defendants were permitted to plead guilty while reserving their rights to appeal from the denial of their motion to suppress.  The defendant concedes in his brief, however, that he "pleaded guilty afterwards, not based on the unfulfilled promise of the prosecutor."

Appellant's Brief at 30. Even assuming that at the time of the initial change-of-plea hearing in October of 2004 there existed an "informal agreement" that the defendant would be permitted to plead guilty without waiving the right to appeal from the denial of the suppression motion, he does not argue that the actual plea, entered three months later, was pursuant to such an agreement. His "plea was thus in no sense the product of governmental deception; it rested on no 'unfulfilled promise.'" Mabry v. Johnson, 467 U.S. 504, 510 (1984). Consequently, the defendant is not entitled to specific performance of the alleged initial "partial oral/written agreement."

## II. Role in the Offense

The defendant claims that the district court erred in denying his request for a two-level reduction for his minor role in the offenses of conviction. "[A] defendant who aspires to be classified as a minor participant bears the burden of proving that he is both (i) less culpable than most other participants in the offenses of conviction, and (ii) less culpable than the average miscreant involved in offenses of the same genre." United States v. Sanchez, 354 F.3d 70, 74 (1st Cir. 2004). "Review of the decision to deny a downward adjustment for minor role is for clear error." United States v. Morales-Madera, 352 F.3d 1, 14 (1st Cir. 2003). "If the record supports at least two permissible inferences, the factfinder's choice between or among them cannot be clearly

erroneous. Accordingly, we rarely reverse a district court's decision regarding whether to apply a minor role adjustment." United States v. Bravo, 489 F.3d 1, 11 (1st Cir.), cert. denied, 128 S.Ct. 344 (2007).

In determining that the defendant was not a minor participant, the sentencing court relied upon the defendant's own testimony that 1) he had been given a cell phone and assigned responsibility for making the contact with the intended recipient of the drugs when the vessel reached Puerto Rico, and 2) that he had originally been recruited to participate in the drug smuggling scheme because of his familiarity with the coastline of the Dominican Republic, the original planned destination.

The defendant maintains in his brief that "[t]here is no factual controversy" regarding the role in the offense and that the issue he raises "turns merely on whether or not [Plutarco's admitted] conduct can be considered minimal, minor or average." In this regard, he argues that the court erred in relying upon the second factor -- his knowledge of the Dominican coastline. Because the drugs were brought into the United States and the boat never traveled to the Dominican Republic, he argues that the second factor was irrelevant.

We disagree. The court relied upon the fact that the defendant "was hired initially as the man that was going to navigate the boat through the waters of Santo Domingo." Although

-4-

the boat did not end up traveling to the Dominican Republic, it does not appear clearly erroneous for the court to have inferred that a person chosen to navigate the boat into the port of arrival was also a person charged with responsibility for other important tasks.

The defendant also argues that his role in the offenses should have been assessed in the context of the "whole scenario," and in comparison with the roles of "the sellers and buyers of the shipment" and the distributors in the United States. He contends that his role was minor because it was limited "to aid[ing] in the transportation of drugs from one point to the other." However, "role-in-the-offense adjustments depend . . . on comparing each offender's actions and relative culpability with the elements of the offense." United States v. Ocasio, 914 F.2d 330, 333 (1st Cir. 1990). Here, the defendant was not charged with distribution of the drugs. He was charged with possession with intent to distribute and with conspiring to import drugs. Therefore, he "had a hand in each of the essential elements of the offense of conviction," id., and the district court did not clearly err in failing to compare his role with unidentified purchasers, sellers, and distributors of the marijuana.

III. Failure to Depart

The defendant claims that the sentencing court erred in not granting him a downward departure on the ground of duress, as

was granted to several of his co-defendants. He testified at his sentencing hearing that when he learned that the drugs were to be delivered to Puerto Rico instead of the Dominican Republic, he wanted to abandon the venture, but felt that he "had no alternative but to get in the boat."

The defendant's failure to seek a downward departure on this basis in the district court forecloses our consideration of the issue. See United States v. Morales-Madera, 352 F.3d 1, 14 (1st Cir. 2003). Moreover, even if the court had denied a request by the defendant for a departure on this ground, "on appeal, we only have jurisdiction to review if 'the sentencing court's failure to depart did not represent an exercise of factfinding or discretion, but was instead the product of the court's miscalculation about whether it possessed the authority to depart.'" Bravo, 489 F.3d at 12-13. Given that the court granted downward departures for duress for some co-defendants, it was clearly aware of its authority to depart on that basis.

IV. Booker Error

The defendant argues that United States v. Booker, 543 U.S. 220 (2005), prohibited the sentencing court from increasing his sentence based on judicial findings of fact, including role in the offense, and that such determinations must be made by a jury. As an initial matter, the court did not increase the defendant's sentence based on judicial findings of fact regarding his role in

the offense; it merely declined to reduce his sentence on that basis. Moreover, where as in this case the sentence does not exceed the statutory maximum for the offenses to which defendant pled guilty, this court has held that "[u]nder Booker, a judge may do such fact finding in determining the Guidelines range. Nothing in Booker requires submission of such facts to a jury so long as the Guidelines are not mandatory." United States v. Antonakopoulos, 399 F.3d 68, 80 (1st Cir. 2005). The sentencing court applied the advisory guidelines and there was no Booker error.

V. Judicial Bias

The defendant claims judicial bias by the judge who sentenced him and seeks resentencing before a new judge. We review for abuse of discretion the refusal of a trial judge to recuse himself. United States v. Ayala, 289 F.3d 16, 27 (1st Cir. 2002). "[D]isqualification is appropriate when 'the facts asserted provide what an objective, knowledgeable member of the public would find to be a reasonable basis for doubting the judge's impartiality.'" Id. (citation omitted). Here, the issue of bias was raised in a motion filed by defense counsel on April 1, 2005, to withdraw from representing the defendant. The motion cited as "evidence" of potential bias the judge's comments critical of the attorney's performance during the March 31, 2005 sentencing hearing.

> [J]udicial remarks during the course of trial
> that are critical or disapproving of, or even
> hostile to, counsel, the parties, or their
> cases, ordinarily do not support a bias or

-7-

> partiality challenge.  They *may* do so if they reveal an opinion that derives from an extrajudicial source; and they *will* do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible.

Liteky v. United States, 510 U.S. 540, 555 (1994).  The defendant has not alleged an extrajudicial source from which the alleged bias was derived.  The transcript of the sentencing hearing does not reveal "such a high degree of favoritism or antagonism as to make fair judgment impossible." Id.  The defendant's bias claim relies largely upon the district court's tone of voice rather than the words themselves.  At bottom, then, his claim relies upon "expressions of impatience, dissatisfaction, annoyance, and even anger," which the Supreme Court has ruled do not establish bias or partiality. Id. at 555-56.  When the sentencing hearing resumed on April 4, 2005, the court specifically denied any animus toward defense counsel and explained that it was concerned about the lack of legal basis for some of the arguments made by counsel.  At this point, counsel for the defendant confirmed that he did not feel that the court had been "ironic" with him during that day's hearing.

The other grounds on which the defendant rests his present claim of judicial bias implicate judicial rulings in the case, including the denial of the defendant's request for a two-level reduction for a minor role in the offenses.  It is settled

that "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion. . . . Almost invariably, they are proper grounds for appeal, not for recusal." <u>Id.</u> at 555. Such is the case here, where the rulings neither show a reliance upon an extrajudicial source nor display the requisite "deep-seated favoritism or antagonism that would make fair judgment impossible." <u>Id.</u> Instead, the transcripts of the sentencing hearings reveal that the district court went to great lengths to ensure fairness in the defendant's sentencing.

The conviction and sentence are <u>affirmed</u>. <u>See</u> 1st Cir. R. 27(c).