# United States Court of Appeals
## For the First Circuit

No. 22-1189

UNITED STATES OF AMERICA,

Appellee,

v.

JAMES DE LA CRUZ,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Richard G. Stearns, U.S. District Judge]

Before

Barron, Chief Judge,
Thompson and Gelpí, Circuit Judges.

Benjamin Brooks, with whom Good Schneider Cormier & Fried was
on brief, for appellant.
Mark T. Quinlivan, Assistant United States Attorney, with
whom Joshua S. Levy, Acting United States Attorney, was on brief,
for appellee.

January 30, 2024

**GELPÍ**, **Circuit Judge**.  Defendant James De La Cruz ("De La Cruz") was indicted for conspiracy to distribute and to possess with intent to distribute one kilogram or more of heroin and 400 grams or more of fentanyl as well as possession with intent to distribute identical drugs at identical quantities.  De La Cruz pled guilty to both counts and now appeals to challenge the substantive reasonableness of his 108-month sentence.[1]  Because De La Cruz's within-the-range sentence is substantively reasonable, we affirm.

## I. BACKGROUND

### A. Relevant Facts

We begin with a review of the facts leading to the indictment.  Given that this appeal follows De La Cruz's guilty plea, we draw the facts from "the change-of-plea colloquy, the presentence investigation report ("PSR"), and the sentencing record."  United States v. Diaz-Serrano, 77 F.4th 41, 44 (1st Cir. 2023).

---

[1] De La Cruz raises additional arguments, including challenges to the constitutionality of the statute under which he was convicted by plea, in his pro se supplemental brief.  Because these arguments were not raised below, they are reviewed for plain error. United States v. Pabon, 819 F.3d 26, 33 (1st Cir. 2016).  Given that De La Cruz did not address the plain-error test in his pro se brief, we deem these claims waived for lack of developed argumentation.  See id.(holding that the defendant "waived review of his forfeited claims because he does not even attempt to meet the four-part test" for plain error).

In September 2019, Homeland Security Investigations ("HSI") was informed by a confidential source ("CS") that De La Cruz was in communication with a Mexican drug trafficking organization. HSI directed the CS to set up a drug deal for the purchase of heroin and fentanyl. To do this, the CS exchanged text messages with an unidentified Mexican national who stated that he would pass the CS's phone number to "his boy," a drug courier in New York later identified as De La Cruz.

On September 23, 2019, De La Cruz called the CS to discuss a drug purchase for ten kilograms of heroin and fentanyl. They made several phone calls to each other over the following days and set up an in-person meeting for October 3, 2019. On that day, De La Cruz and the CS met in a Boston restaurant where they agreed to exchange drug samples soon. On October 8, 2019, De La Cruz gave the CS sample quantities of heroin and fentanyl at a restaurant in Peabody, Massachusetts. Following this meeting, De La Cruz and the CS continued to negotiate the specifics of the transaction and agreed that De La Cruz would transport ten kilograms of fentanyl and six kilograms of heroin from New York to Massachusetts. They decided that the transaction would take place in a hotel parking lot in Peabody, Massachusetts.

On October 21, 2019, De La Cruz and the CS exchanged multiple phone calls to keep the latter apprised of the former's arrival time. During these phone calls, De La Cruz told the CS

that "his driver" would arrive in a separate vehicle. De La Cruz and the CS met in a hotel parking lot in Peabody shortly before 2:30 p.m. The CS was previously fitted with an audio/video recording device. De La Cruz entered the CS's vehicle where they discussed the total weight of the drugs and prices. About ten minutes later, a silver Mercedes Benz -- driven by Fatima Almonte with Santos Roque ("Roque"), whom De La Cruz previously referred to as "his driver," in the left rear passenger seat -- arrived and parked next to the CS. Then, the CS entered the Mercedes while De La Cruz sat on the hotel's back steps nearby.

In the Mercedes, Roque removed sixteen wrapped, brick-shaped packages from a mechanical hide which he counted with the CS. At that point, the CS gave a prearranged signal. Agents moved in, arrested De La Cruz and Roque, and seized the sixteen packages. The drugs were tested and determined to be 9,916 grams of fentanyl and 5,833 grams of heroin. A small amount of fentanyl, 1.52 grams, was found in De La Cruz's vehicle as well.

## B. Legal Proceedings

On October 22, 2019, De La Cruz and Roque were each charged by way of complaint with one count of conspiracy to distribute and to possess with intent to distribute one kilogram or more of heroin and 400 grams or more of fentanyl, in violation of 21 U.S.C. § 846, and one count of possession with intent to distribute one kilogram or more of heroin and 400 grams or more of

- 4 -

fentanyl, in violation of 21 U.S.C. § 841(a)(1). On November 20, 2019, De La Cruz was indicted on the same charges, and on May 5, 2021, he entered a straight guilty plea as to both counts.

The probation office prepared the PSR and determined that the base offense level was 36 due to the combined converted weight of the drugs, which was 30,636.37 kilograms. This amount requires a statutory ten-year mandatory minimum sentence. However, De La Cruz bypassed the mandatory minimum because he met the safety valve criteria under 18 U.S.C. § 3553(f).[2] Due to said compliance, De La Cruz received a two-level reduction under U.S.S.G. § 5C1.2. He also received an additional three-level reduction for early acceptance of responsibility under U.S.S.G. §§ 3E1.1(a)-(b). This resulted in a total offense level of 31, and when combined with De La Cruz's criminal history category of I, resulted in an advisory sentencing guidelines range of 108-135 months. De La Cruz did not object to the PSR.

At the sentencing hearing on October 6, 2021, the district court noted at the outset that the advisory sentencing guideline range was properly calculated. However, De La Cruz's counsel requested a downwardly variant sentence of 36 months or at least no higher than the 63 months that his co-defendant, Roque,

---

[2] The safety valve statute guarantees the benefit that courts will disregard "any statutory minimum sentence," which was done here. 18 U.S.C. § 3553(f).

- 5 -

received. He drew attention to several aspects about De La Cruz: his economic means, his limited ninth-grade education, and his relatively scarce upbringing. De La Cruz also provided substantial financial support to his mother who suffers from chronic health conditions. These circumstances, De La Cruz's counsel posited, constituted the driving forces behind De La Cruz's involvement in the drug transaction. De La Cruz's counsel next emphasized that he played a lesser role in the offense, essentially a middleman, as the prices and quantities were determined by the CS and the Mexican individual, and not him. Finally, De La Cruz's counsel alluded to pharmaceutical executives for starting the opioid epidemic and to a Department of Justice report to demonstrate that a sentence above 63 months would have a marginal deterrent effect.

Considering these arguments and the sentencing factors in 18 U.S.C. § 3553(a), the district court imposed a lower-end sentence of 108 months of imprisonment followed by 3 years of supervised release. The court found that De La Cruz and Roque were not "in the same circumstance or the same situation" because De La Cruz was the "manager" who referred to Roque as "his driver." This employee-like reference was found to "establish a significant difference in status with respect to the offense as a whole." Additionally, the court factored into the imposed sentence the "astonishing amount of fentanyl" being of "a much larger quantity" than the court had seen and "just how dangerous this particular

drug is."  Accordingly, judgment was entered on October 8, 2021, and De La Cruz timely appealed.

## II. DISCUSSION

De La Cruz does not claim that the district court has committed any procedural error, thus, our review is limited to the substantive reasonableness of his 108-month sentence.[3]  We review a preserved challenge to a sentence's substantive reasonableness under an abuse-of-discretion standard.[4]  United States v. Reyes-Gomez, 927 F.3d 9, 11-12 (1st Cir. 2019).  Accordingly, our review is highly deferential and "we cannot desultorily substitute our judgment for that of the sentencing court."  United States v. Martin, 520 F.3d 87, 92 (1st Cir. 2008); see also United States v.

---

[3] See United States v. Prosperi, 686 F.3d 32, 42 (1st Cir. 2012) (stating that there are two aspects to analyzing the reasonableness of a sentence, procedural error and substantive reasonableness, and that "[i]f an appellant makes no claim of procedural error, as is the case here, we limit our review to the substantive reasonableness of the sentence"); see also Martin, 520 F.3d at 92.

[4] We note that, while De La Cruz has preserved his general substantive-reasonableness challenge by advocating for a shorter sentence below, see Holguin-Hernandez v. United States, 140 S. Ct. 762, 766 (2020), and has also preserved the majority of his particular substantive-unreasonableness arguments by raising them below, cf. United States v. Colón-De-Jesús, 85 F.4th 15, 24-26 (1st Cir. 2023), some of the specific arguments may not have been preserved.  However, because his arguments fail even under the abuse-of-discretion standard, we give him the benefit of the doubt and apply this more appellant-friendly standard of review as we consider his arguments.  See United States v. Daoust, 888 F.3d 571, 575 n.2 (1st Cir. 2018) (noting that "in all events, the appellant's claim of error lacks merit under any conceivable standard of review").

Clogston, 662 F.3d 588, 592 (1st Cir. 2011); United States v. Taylor, 532 F.3d 68, 70 (1st Cir. 2008). A sentence is substantively reasonable if its rationale is plausible and resulted in a defensible outcome. United States v. De la Cruz-Gutiérrez, 881 F.3d 221, 227 (1st Cir. 2018). "There is no one reasonable sentence in any given case but, rather, a universe of reasonable sentencing outcomes." Clogston, 662 F.3d at 592. All we must do is "simply . . . determine whether the sentence falls within this broad universe" considering "a myriad of relevant factors." United States v. Rivera-Morales, 961 F.3d 1, 21 (1st Cir. 2020); see Clogston, 662 F.3d at 593. Therefore, the defendant's burden in challenging the substantive reasonableness of a sentence is heavy and even more so when the sentence is within a properly calculated sentencing guideline range. De la Cruz-Gutiérrez, 881 F.3d at 227. With this guidance, we determine that De La Cruz has failed to meet this heavy burden.

De La Cruz argues, by piecing together various reasons to support his only challenge to the substantive reasonableness of his sentence, that 108 months of incarceration was greater than necessary to achieve the stated goals of sentencing. We lay out these lines of reasoning and address each in turn.

De La Cruz contends that his sentence is significantly higher than the average sentence for most crimes of actual and immediate violence. He specifically notes that those crimes are

"serious violent crimes" because those defendants "didn't just create a risk of death by overdose, but actually killed another person." To prove his point, De La Cruz cites data from the United States Sentencing Commission for defendants with a criminal history of category I who, on average, received sentences that were 20-89 months lower than his 108-month sentence for different crimes than what he pled guilty to. De La Cruz also states that he has met all the safety valve requirements under 18 U.S.C. § 3553(f), meaning he has truthfully provided all the information and evidence that he had concerning the drug transaction. Thus, De La Cruz claims that he was disproportionately punished for the threat of harm as opposed to actual violence or harm.

This sentencing data, and De La Cruz's safety valve eligibility, fail to assist him in carrying his heavy burden to prove that his sentence was substantively unreasonable. Section 3553(a) lists the factors that a district court shall consider in imposing a sentence. The district court is bound to consider "the applicable category of offense committed" along with "the applicable category of defendant" whereas De La Cruz only asks us to consider the latter without the former. 18 U.S.C. § 3553(a)(4)(A). This illuminates the flaw in his reasoning. Though De La Cruz characterizes his offense as some degree lesser than the "serious violent crimes" he cites, we have recognized the possession and distribution of fentanyl as "extremely dangerous

based on [the drug's] potency and known lethality." United States v. Heindenstrom, 946 F.3d 57, 65 (1st Cir. 2019) (internal quotation omitted).

At the sentencing hearing, the district court acknowledged the "astonishing amount of fentanyl" involved in this transaction with the amount here consisting of a much "larger quantity" than what the court had previously seen. The court stated that deterrence and punishment were weighed in consideration of the sentence "given not only the amount of drugs but just how dangerous this particular drug is." This explanation demonstrates that the sentencing court thoughtfully considered the dangers of fentanyl in defensibly sentencing De La Cruz to 108 months of imprisonment. See Koon v. United States, 518 U.S. 81, 98 (1996) (highlighting that sentencing is a "traditional exercise of discretion" which is "informed by [the sentencing court's] vantage point and day-to-day experience in criminal sentencing").

Additionally, the sentences for other defendants with a similar offense and criminal history category as De La Cruz further demonstrate that De La Cruz's 108 months is a defensible outcome. We have upheld a downwardly variant 108-month sentence for a defendant guilty of attempted possession with intent to distribute 400 grams of fentanyl and a criminal history category of I. United States v. Concepcion-Guliam, 62 F.4th 26, 36 (1st Cir. 2023). In doing so, we noted that "[f]entanyl is an extremely dangerous drug,

widely reputed to be the modern-day equivalent of the Grim Reaper." Id. We have also upheld an upwardly variant 120-month sentence for a defendant with a criminal history category of I who was convicted for distribution of and possession with intent to distribute fentanyl. United States v. Carvajal, 85 F.4th 602, 616 (1st Cir. 2023). Accordingly, we cannot say that the district court's acceptance of the lower end of the sentencing guideline range disproportionately punishes De La Cruz as he asserts.

Next, De La Cruz posits that he only played a low-level, non-discretionary role in the transaction. Thus, his sentence was harsher than necessary in two ways. First, the amount of drugs involved in the transaction caused the sentencing guideline range to increase, yet the drug quantity for this transaction was determined by someone other than De La Cruz. Accordingly, the converted weight of the drugs here was barely beyond the threshold for a base level of 36 and if less, the base level would have been 34, resulting in a lower sentencing range. Second, a sentencing disparity exists between him and his co-defendant, Roque. According to De La Cruz, he and Roque essentially played similar non-discretionary roles in the transaction where he "arrang[ed] the mechanics of the transaction and [met] with the C[S] in advance" and Roque ultimately delivered the drugs in the car with the mechanical hide. Accordingly, De La Cruz maintains that his sentence is too harsh under these circumstances.

We disagree. First, who determined the quantity of drugs bears no weight on the actual quantity of drugs involved in the transaction. The fact that someone other than De La Cruz determined the drug quantity to be sold in this instance does not meaningfully affect the base level for his sentence. To state it plainly, the base level was determined by the converted drug weight that De La Cruz was accountable for.[5] Second, a sentencing disparity may only be ascertained between "two identically situated defendants." United States v. Grullon, 996 F.3d 21, 35 (1st Cir. 2021) (citing United States v. Reyes-Santiago, 804 F.3d 453, 467 (1st Cir. 2015)); see also United States v. González-Barbosa, 920 F.3d 125, 130-31 (1st Cir. 2019) (internal citation omitted) (noting 18 U.S.C. § 3553(a)(6)'s aim towards addressing national disparities amongst defendants with similar records and permitting the avoidance of such disparities between co-defendants). "Such cases, however, are unusual to say the least." Grullon, 996 F.3d at 35-36 (citing Reyes-Santiago, 804 F.3d at 467). "[O]ur general rule of thumb is that a 'defendant is not entitled to a lighter sentence merely because his co-defendants received lighter sentences.'" United States v.

---

[5] De La Cruz admitted involvement by pleading guilty and is therefore accountable for the quantities of fentanyl and heroin in the unobjected PSR. See United States v. Orsini, 907 F.3d 115, 120 (1st Cir. 2018) (holding that a defendant accepts the PSR when he declines to object).

Reyes-Rivera, 812 F.3d 79, 90 (1st Cir. 2016) (citations omitted). "Without showing appropriate comparators," De La Cruz cannot claim that a sentencing disparity exists between him and Roque. González-Barbosa, 920 F.3d at 131.

The district court explained why it did not find De La Cruz and Roque to be "in the same circumstance or the same situation." Roque was subject to a much lower advisory sentencing guideline range than De La Cruz. United States v. Bedini, 861 F.3d 10, 22 (1st Cir. 2017) (explaining that the defendants' sentencing disparity claim failed, in part, because the other defendants were "subject to lower applicable Guidelines ranges"). De La Cruz, by his own admission, referred to Roque as his driver which "alone is enough to establish a significant difference in status with respect to the offense as a whole." Id. (rejecting a sentencing disparity claim, in part, because the other defendants were junior members -- a driver and a translator -- within the conspiracy). The district court acted well within its discretion in finding that De La Cruz and Roque were not identically situated. Thus, we defer to this factfinding which plausibly justified the imposition of a higher sentence upon De La Cruz. Grullon, 996 F.3d at 36 (deferring to the sentencing judge's findings of fact).

Lastly, De La Cruz points to data from the National Institute of Justice to demonstrate that little to no incarceration would better protect the public from potential criminal conduct

and that lengthy incarceration periods do little for deterrence. He also argues that a lengthy incarceration does not promote rehabilitation, therefore, a lesser sentence would have been sufficient. The only question before us, however, is whether the district court abused its discretion in sentencing De La Cruz to 108 months' imprisonment, within the properly calculated sentencing guideline range, not whether longer or shorter incarceration periods further the goal of deterrence. To the former, the answer is simply no. The sentencing statute instructs sentencing courts to consider deterrence "in determining the particular sentence to be imposed." 18 U.S.C. § 3553(a). The district court wove deterrence into the calculation of De La Cruz's sentence finding that the particularly dangerous effect of fentanyl and the quantity here deserved considerable weight. Further, the district court explicitly stated that it considered the § 3553 sentencing factors, and this statement is one we deem meaningful. De la Cruz-Gutiérrez, 881 F.3d at 228. De La Cruz's sentence is not implausible nor indefensible because he merely disagrees with the district court's finding that a within-the-range length would further deterrence. De La Cruz's 108-month sentence is entirely within the "universe of reasonable and defensible sentences." Id. at 229 (citing United States v. Torres-Landrúa, 783 F.3d 58, 69 (1st Cir. 2015)).

- 14 -

## III. CONCLUSION

For the foregoing reasons, the sentence imposed by the district court is **<u>affirmed</u>**.